# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:19-cr-10081-IT |
| | ) | |
| WILLIAM FERGUSON, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFERRED PROSECUTION AGREEMENT**

1.     This Deferred Prosecution Agreement (the "Agreement") is made between the Acting United States Attorney for the District of Massachusetts ("USAO") and Defendant William Ferguson ("Defendant").

<u>Acceptance of Responsibility</u>

2.     Defendant acknowledges that the USAO has independently developed evidence during its investigation sufficient to establish beyond a reasonable doubt the facts described in the attached Statement of Agreed Facts, and Defendant accepts responsibility for this conduct. Defendant stipulates to the accuracy of Statement of Agreed Facts. Defendant agrees that he will not contest either the admissibility into evidence or the accuracy of the Statement of Agreed Facts in any subsequent criminal proceedings that may occur in the event of a breach of this Agreement. Defendant further agrees that he will not himself or through any agents, including present or future attorneys, make any public statements contradicting any of the facts as set forth in the Statement of Agreed Facts. Any such contradictory statement shall constitute a material breach of this Agreement.

<u>Fine</u>

3.     Defendant shall pay a fine of $50,000, which is the full amount set forth in paragraph 102 of the Second Superseding Indictment. The full amount shall be paid within

1

Initialed:____

twenty-four months of the date that the Court approves this agreement, as discussed below, and Defendant shall certify his payment to the USAO. The fine payment is a material term of this Agreement, and Defendant's failure to make timely payment shall render the obligations of the USAO under this Agreement null and void at its discretion.

Deferral of Prosecution

4.      Absent a material breach by Defendant of his obligations under this Agreement, the USAO will file a dismissal of the charges in the Second Superseding Indictment twenty-four months after this agreement is approved by the Court, and the USAO will bring no additional charges against Defendant relating to the conduct described in the Second Superseding Indictment and the Statement of Agreed Facts.

5.      This Agreement does not protect Defendant from prosecution for any crimes except those arising from the conduct described in the Second Superseding Indictment and the Statement of Agreed Facts; it does not apply to any individual or entity other than Defendant.

6.      The USAO and Defendant (the "Parties") understand that this Agreement is subject to the Court's approval in accordance with 18 U.S.C. § 316l(h)(2); specifically, the parties must obtain Court's approval, under the Speedy Trial Act, of the delay of Defendant's trial on the Second Superseding Indictment in order to allow Defendant sufficient time to demonstrate his good conduct. Should the Court for any reason decline to approve the deferral of prosecution, the Parties shall be released from any and all obligations under this Agreement, and this Agreement shall be null and void.

Tolling of Statute of Limitations

7.      Should the Court decline to approve the deferral of prosecution in accordance with 18 U.S.C. § 316l(h)(2), Defendant agrees that all applicable statutes of limitation governing

2

Initialed:____

the federal criminal violations with which Defendant has been charged, or for which Defendant

could have been charged as of the date of the USAO's execution of this Agreement, based on the

allegations that form the basis for the Second Superseding Indictment or are related to the

Statement of Agreed Facts shall be tolled from the date of the USAO's execution of this

Agreement to and including the date upon which the Court declines to approve the deferral for its

full duration.  Defendant further agrees that he may not rely upon the period of time during

which any applicable statute of limitations is tolled in accordance with this paragraph in asserting

any legal, equitable or constitutional right he may have to a speedy trial pursuant to the Fifth or

Sixth Amendments to the United States Constitution, 18 U.S.C. § 3161, Federal Rule of Criminal

Procedure 48(b), any applicable local rule of the United States District Court for the District of

Massachusetts, or any other applicable legal or equitable principle.  The tolling provisions of this

paragraph are not intended to apply to any federal criminal violations other than the offenses

charged in the Second Superseding Indictment; nor is this Agreement intended to limit the ability

of the USAO to prosecute Defendant for any criminal violations other than the offenses in the

Second Superseding Indictment.

<u>Breach of the Agreement</u>

8.      Should the USAO, in its sole discretion, which is not and shall not be subject to

appeal or review, determine that Defendant has:  (a) knowingly given false, incomplete or

misleading information to any law enforcement officials; (b) engaged in any acts that form a

basis for finding that Defendant has obstructed or impeded the administration of justice; (c)

otherwise knowingly and materially breached any provision of this Agreement; or (d) committed

any crimes before completing all obligations under this Agreement, the USAO may terminate

this Agreement by written notice to Defendant.

3

Initialed:____

9.      After such notice, the USAO may, in its sole discretion, prosecute Defendant for the offenses charged in the Second Superseding Indictment.  Moreover, with respect to any prosecution of the charges in the Second Superseding Indictment or of offenses based on conduct in the Statement of Agreed Facts that are not time-barred by the applicable statute of limitations (or any other legal, equitable or constitutional basis upon which a prosecution may be time-barred) as of the date of this Agreement, Defendant agrees to waive venue and any legal or procedural defects in any pertinent charging document related to such offenses or conduct.

10.     Defendant agrees that if the USAO determines that Defendant has committed a material breach Defendant will neither contradict the contents of the Statement of Agreed Facts nor challenge the factual or legal sufficiency of the Second Superseding Indictment.

11.     Defendant agrees that the consequences for a breach set forth in this Agreement are remedies to which the USAO is entitled in the event of a breach and shall survive the termination of this Agreement in the event of a breach.  Defendant further agrees that the USAO's remedies for a breach are not limited to those set forth in this Agreement.  Defendant further agrees that in the event of a breach, Defendant shall nevertheless be bound by his waivers of any legal, equitable or constitutional rights set forth in this Agreement, and those provisions shall survive even in the event of a breach.

Agreement Binding Only on Defendant and USAO

12.     The Parties understand and acknowledge that this Agreement is binding on Defendant and the USAO, but specifically does not bind any other components of the U.S. Department of Justice, federal agencies, or any state or local law enforcement or authorities. Further, the waivers and other agreements made by Defendant herein shall not be binding upon Defendant in any civil or criminal proceeding initiated by any state or local government.

4

Initialed:____

<u>Miscellaneous</u>

13.      Nothing in this Agreement restricts in any way the ability of the USAO to proceed against any individual or entity not a party to this Agreement.

14.      Defendant and the USAO agree that this Agreement, including the attached Statement of Agreed Facts, shall be made available to the public.

15.      This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same Agreement. Signatures of the Parties transmitted by facsimile or e-mail shall be deemed to be their original signatures for all purposes.

<u>Complete Agreement</u>

16.      This Agreement, including the attached Statement of Agreed Facts, constitutes the entire agreement between the Parties, and supersedes all prior agreements or understandings, both oral and written, with respect to the subject matter hereof and the disposition of this case. No promises, representations or agreements have been made other than those set forth in this Agreement.  This Agreement can be modified or supplemented only in a written memorandum signed by the Parties or by express agreement of the Parties on the record in court.

SO AGREED.

Initialed:_____

NATHANIEL R. MENDELL
Acting United States Attorney

By:  _____

STEPHEN E. FRANK
Chief, Securities, Financial & Cyber Fraud
Unit
SETH KOSTO
Deputy Chief, Securities, Financial & Cyber
Fraud Unit

By:  _____

KRISTEN A. KEARNEY
LESLIE A. WRIGHT
KRISS BASIL
Assistant United States Attorneys

6

Initialed:____

## ACKNOWLEDGMENT OF DEFERRED PROSECUTION AGREEMENT

I have read the Deferred Prosecution Agreement, including the attached Statement of Agreed Facts, in its entirety and discussed it with my attorneys.  I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts.  I further state that no additional promises or representations concerning the disposition of this case have been made to me by any official of the United States. I acknowledge that the terms and provisions of this Agreement have been fully explained to me, including, without limitation:  the legal, equitable and constitutional rights I am waiving under this Agreement; that I have had a full and complete opportunity to consult with legal counsel and to ask any questions about the terms and provisions of this Agreement; that I fully understand the terms and provisions of this Agreement; that my agreements and waivers stated herein are knowing and voluntary and are made with the advice of counsel; and that I am satisfied with the legal representation provided by my legal counsel.  I am entering into this Agreement freely, voluntarily, and knowingly.

WILLIAM FERGUSON
Defendant

Date: 9/14/21

We each certify that William Ferguson has read this Deferred Prosecution Agreement, including the attached Statement of Agreed Facts, and that we have discussed its meaning with him.  We each believe he understands the Agreement and is entering into it freely, voluntarily, and knowingly.

Kearns Davis, Esq.

Shaun Clarke, Esq.

Dane Ball, Esq.

Attorneys for Defendant

Date: 9/14/21

7

Initialed:____

**ACKNOWLEDGMENT OF DEFERRED PROSECUTION AGREEMENT**

I have read the Deferred Prosecution Agreement, including the attached Statement of Agreed Facts, in its entirety and discussed it with my attorneys. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations concerning the disposition of this case have been made to me by any official of the United States. I acknowledge that the terms and provisions of this Agreement have been fully explained to me, including, without limitation: the legal, equitable and constitutional rights I am waiving under this Agreement; that I have had a full and complete opportunity to consult with legal counsel and to ask any questions about the terms and provisions of this Agreement; that I fully understand the terms and provisions of this Agreement; that my agreements and waivers stated herein are knowing and voluntary and are made with the advice of counsel; and that I am satisfied with the legal representation provided by my legal counsel. I am entering into this Agreement freely, voluntarily, and knowingly.

_____
WILLIAM FERGUSON
Defendant

Date:   _____

We each certify that William Ferguson has read this Deferred Prosecution Agreement, including the attached Statement of Agreed Facts, and that we have discussed its meaning with him. We each believe he understands the Agreement and is entering into it freely, voluntarily, and knowingly.

_____
Kearns Davis, Esq.

_____
Shaun Clarke, Esq.

_____
Dane Ball, Esq.

Attorneys for Defendant

Date:   _____

7

Initialed:_____

## STATEMENT OF AGREED FACTS

1.      From about 2016 to present, William Ferguson ("Ferguson") was a resident of

Winston-Salem, North Carolina.  From about 2005 to about 2015, Ferguson worked as the men's

volleyball coach at the University of Southern California ("USC").  Beginning in or about June

2016, Ferguson was employed as the women's volleyball coach at Wake Forest University

("Wake Forest").  In that capacity, Ferguson owed a duty of honest and faithful services to Wake

Forest.

2.      Wake Forest is a highly selective private university located in Winston-Salem,

North Carolina.  Wake Forest annually receives federal benefits in excess of $10,000 under

federal programs involving grants, contracts, subsidies and other forms of federal assistance.

3.      The athletic teams of Wake Forest compete in most sports at the Division I level,

the highest level of intercollegiate athletics sanctioned by the National Collegiate Athletic

Association ("NCAA").

4.      Wake Forest recruits student-athletes with the expectation that those recruits will

play for the university's athletic teams and thereby contribute to their success.  Based on that

expectation, Wake Forest frequently recruits and admits student-athletes even though they have

lower grades and standardized test scores than other applicants, including non-recruited athletes.

5.      The admissions office at Wake Forest allots a set number of admissions slots to be

divided among the coaches, with the understanding that coaches will use those slots to recruit

athletes who will contribute to the success of their teams.

6.      William "Rick" Singer ("Singer") operated a scheme to secure college admissions

for students by inducing college athletic coaches and athletic department officials to designate

the students as athletic recruits, regardless of their athletic ability, and often based on falsified

8

Initialed:____

credentials, in exchange for payments to specific university athletic funds under their oversight or control, to themselves personally, or to third parties for their benefit.

7.      In about February 2016, Ferguson met with Singer and agreed to seek out university athletic coaches who would agree to work with Singer by designating applicants as athletic recruits in exchange for purported donations to athletic programs under their oversight or control.

8.      Thereafter, Ferguson attempted to recruit coaches at several universities to work with Singer. For example, on or about February 28, 2016, Ferguson updated Singer about his efforts to recruit a coach at the University of Miami to work with Singer.  Ferguson wrote: "Talked to the Miami coach and he's interested.  He's not quite sure how much he can do.  He said he doesn't have many.  I got the [r]ead that he'[d] do it if it were real easy, but I don't think he'll work at it too much.  I will follow up w[ith] him in a couple days."

9.      In or about June 2016, Ferguson was hired to be the head coach of women's volleyball at Wake Forest.

10.      In about February 2017, Ferguson agreed with Singer to secure admission to Wake Forest for a student by designating the student as a recruit to the women's volleyball team in exchange for future purported donations that would inure to Ferguson's personal benefit.  The student had previously been placed on the wait list for admission to the university.

11.      On or about March 24, 2017, Ferguson designated the student as a volleyball recruit, but he did not disclose to the Wake Forest admissions office that he did so in exchange for future purported donations that would inure to Ferguson's personal benefit.

12.      On or about May 1, 2017, the student Ferguson designated was admitted to Wake Forest as a volleyball recruit.

9

Initialed:____

13.     In or about June and July 2017, Singer paid $100,000 to three accounts Ferguson designated, including purported donations of $10,000 to the Wake Forest Deacon Club and $40,000 to Wake Forest Women's Volleyball, and $50,000 to a private volleyball camp Ferguson controlled.

14.     Ferguson thereafter caused some of the funds from the private volleyball camp's bank account to be transferred to his personal bank account, and he used that money for personal expenses.

15.     Ferguson did not disclose the $50,000 payment from Singer to the volleyball camp to the Wake Forest admissions office, his coaching staff, or anyone else at Wake Forest.

WILLIAM FERGUSON
Defendant

Date:  9/14/21

10

Initialed:____